Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
JONATHAN SAPAN

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SAPAN,<br>individually and on Behalf of All Others Similarly Situated<br><br>        Plaintiff,<br>   vs.<br><br>YELP, INC., a Delaware Corporation,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATION(S) OF TELEPHONE CONSUMER PROTECTION ACT OF 1991**<br><br><br>**DEMAND FOR JURY TRIAL.** |

Plaintiff JONATHAN SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs

bring this action for injunctive relief and damages against Defendants, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS AND INTRADISTRICT ASSIGNMENT

1. Plaintiff was at all times herein mentioned a resident of the County of Norfolk, State of Massachusetts, who had and paid for residential phone service on his phone line, 858-324-9001.

2. Plaintiff alleges on information and belief that Defendant Yelp, Inc. ("Yelp") is, and at all times herein mentioned was, a Delaware corporation with its headquarters and principal place of business in San Francisco, California, and was doing business in the County of San Diego, State of California.

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federal courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). Venue is proper in the District wherein the Defendant is headquartered.

4. Plaintiff alleges on information and belief that at all times herein mentioned any person acting on behalf of Yelp was an agent of Yelp, expressly directed to do the acts done, whose activities gave the appearance of being

expressly directed by Yelp, or whose actions were approved by Yelp expressly or impliedly after the fact.

## NATURE OF THE ACTION

5. Plaintiff brings this class action against Yelp for damages, statutory damages, injunctive relief and other relief available at law and in equity on behalf of himself and members of the following class:

*All persons located within the United States of America who have a residential phone number on the federal National Do Not Call Registry to which Yelp transmitted more than one call within any 12-month period without prior express written consent or an established business relationship anytime from June 5, 2013 to the present.*

6. Yelp is on online service that publishes and curates reviews of local businesses throughout the United States.

7. Yelp's revenues come from business advertising and selling local businesses help and consulting in obtaining higher Yelp review ratings, or "stars" within their standard five star rating system.

8. Yelp has a complicated relationship with business owners since it actively manages which reviews may be published or not while also selling businesses help and consulting in raising their Yelp ratings.

9. Regardless of any of those issues, it is unquestionable that Yelp does call people to offer their consulting services for sale.

10. While Yelp intends to make sales calls to its target market, small businesses, it fails to do proper Telephone Consumer Protection Act ("TCPA") compliance and therefore it often times calls residential numbers.

11. The National Do Not Call Registry is a list of phone numbers from persons who have indicated their preference to limit the telemarketing calls they receive. The registry is managed by the Federal Trade Commission ("FTC"), the nation's consumer protection agency. It is enforced by the FTC, the Federal Communications Commission ("FCC"), state officials, and private lawsuits like this one.

12. Any person in the United States may list their residential phone—whether landline or cell—in the National Do Not Call Registry if they do not wish to receive telemarketing calls.

13. Lawful telemarketers may then check the numbers they intend to call against the National Do Not Call Registry to screen out any numbers that appear on it.

14. The National Do-Not Call Registry is publicly available and lawful telemarketers may check numbers in up to five area codes for free, and a reasonable maintenance fee of $59 per additional area code.

15. Lawful telemarketers that subscribe to and diligently check the National Do Not Call Registry before initiating calls and adhere to other reasonable compliance procedures secure the benefit of a "safe harbor" from TCPA lawsuits for calls made in error. See, 47 C.F.R. § 64.1200(c)(2)(i)(A-E).

16. Lawful telemarketers may also call persons whose numbers are on the National Do Not Call Registry if they have prior express written consent or an established business relationship. See, 47 C.F.R. § 64.1200(c)(2)(ii), (f)(14).

17. Persons who engage in telemarketing without performing this TCPA compliance are not acting lawfully and run the risk of being sued for statutory damages under the TCPA if they call numbers on the National Do Not Call Registry, even if those calls are made in error.

18. Yelp made telemarketing calls to Plaintiff and others without first subscribing to and checking the National Do Not Call Registry to avoid calling people who do not wish to be bothered.

19. Plaintiff's residential number has been on the National Do Not Call Registry continuously since August 17, 2013.

20. Yelp called his number anyway, likely in the erroneous belief that it was a business line.

21. Yelp could have easily subscribed to and checked the National Do Not Call Registry before making the calls and it would have quickly informed

them that this was not a business number, and could have enabled the "safe harbor" protections even for calls made in error.

22.  For whatever reasons, Yelp made a business decision to engage in telemarketing without conducting proper TCPA compliance including screening the numbers it was going to call against the National Do Not Call Registry.

23.  Yelp is liable to Plaintiff and the class for all the calls made to persons whose numbers are on the National Do Not Call Registry except those made with prior express written consent or an established business relationship.

### **FACTUAL DETAILS RE NAMED PLAINTIFF**

24.  Defendants made six (6) live calls to JONATHAN SAPAN's home phone number (858-324-9001) wherein they tried to pitch Yelp consultancy services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- January 1, 2017 at 5:49pm, CID 415-266-3330 UNKNOWN NAME
- February 6, 2017 at 9:19am, CID 415-266-3330 UNKNOWN NAME
- February 10, 2017 at 1:12pm, CID 415-266-3330 UNKNOWN NAME
- February 16, 2017 at 11:01am, CID 415-266-3330 San Francisc CA [sic]
- February 22, 2017 at 9:39am, CID 415-266-3330 San Francisc CA [sic]
- March 1, 2017 at 3:57pm, CID 415-266-3330 UNKNOWN NAME

25. Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission continuously from August 17, 2013 to the present.

26. While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

27. On or about January 1, 2017, Yelp called Mr. Sapan's residential line and when he did not answer the sales representative left a voicemail attempting to sell Yelp consultancy services.

28. Mr. Sapan's voicemail introduction is entirely personal telling the caller his name is Jonathan and asking them to leave a message, and nothing about it would indicate that Mr. Sapan's number was associated with any commercial enterprise.

29. On or about February 6, 2017, Yelp called Mr. Sapan's residential line. He did not answer and the sales representative did not leave a message.

30. On or about February 10, 2017, Yelp called Mr. Sapan's residential line and when he did not answer the sales representative left a voicemail attempting to sell Yelp consultancy services.

31. On or about February 16, 2017, Yelp called Mr. Sapan's residential line and when he did not answer the sales representative left a voicemail attempting to sell Yelp consultancy services.

32. On or about February 22, 2017, Yelp called Mr. Sapan's residential line. He did not answer and the sales representative did not leave a message.

33. On or about March 1, 2017, Yelp called Mr. Sapan's residential line and he did answer and the sales representative after exchanging pleasantries attempted to sell Yelp consultancy services to improve Yelp ratings and generate new sales.

34. Each of the calls Mr. Sapan missed that did not leave a voicemail came from the exact same CID number as all the other calls wherein Defendants identified themselves and tries to sell their Yelp consultancy services.

35. Therefore, Mr. Sapan alleges on information and belief that Defendants transmitted each of the calls he did not answer, and transmitted them for the purpose of trying to sell their services.

36. To the extent that any of the calls may have used a telemarketing agent or outside sales agent, each one who left a message or spoke to Mr. Sapan self-identified as being with Yelp, and therefore Mr. Sapan alleges on information and belief that that if any of the representatives who called him were not directly employed by Yelp, they were and are agents of Yelp who acted with express

authority, presented themselves as having such authority, and whose conduct Yelp ratified after the fact.

37.   Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

## CLASS ACTION ALLEGATIONS

38.   **Description of the Class**:  Plaintiffs bring this nationwide class action on behalf of themselves and a Class defined as follows:

*All persons located within the United States of America who had a residential phone number on the federal National Do Not Call Registry to which Yelp transmitted more than one call within any 12-month period without prior express written consent or an established business relationship anytime from June 5, 2013 to the present.*

39.   Excluded from the Class are governmental entities, Yelp, any entity in which Yelp has a controlling interest, and Yelp's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

40.     Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

41.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Yelp appears to have been conducting its telemarketing calling campaign since at least 2014 using many employees in multiple call centers throughout the United States to call what they think but do not verify to be businesses.  See, https://www.glassdoor.com/Reviews/Employee-Review-Yelp-RVW5242233.htm, https://www.glassdoor.com/Reviews/Employee-Review-Yelp-RVW9015272.htm.  Even if they only mistakenly called residences five percent of the time and even if only half of those numbers were on the National Do Not Call Registry, the number of class members will number in the thousands, if not tens of thousands of people.  Due to the nature of the trade and commerce involved and Yelp's nationwide reach, Plaintiffs believe that the total number of Class members numbers at least in the thousands, if not tens of thousands of people and members of the Class are numerous and geographically dispersed across the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of

the Class members in a single class action will provide substantial benefits to all parties and to the Court.

42.   **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a.   Whether Yelp transmitted solicitation calls to numbers on the National Do Not Call Registry;

b.   Whether, for any given number on the National Do Not Call Registry that Yelp called, Yelp made more than one call to that number within any 12-month period;

b.   Whether Yelp obtained prior express written consent from the owners of the phone to numbers on the National Do Not Call Registry before transmitting more than one call to them within any 12-month period;

c.   Whether Yelp had an established business relationship with any of the owners of the phone to numbers on the National Do Not Call Registry before transmitting more than one call to them within any 12-month period;

d.   Whether Yelp's conduct in calling persons on the National Do Not Call Registry was willful or knowing within the meaning of the TCPA;

43. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Yelp's common course of conduct since Yelp sent them unauthorized solicitation calls after they had registered their numbers on the National Do Not Call Registry.

44. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in handling TCPA lawsuits and complex litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

45. **Superiority of a Class Action**: Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Yelp's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Yelp common course of conduct. The class action

device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

46.   Adjudication of individual class member's claims with respect to Yelp would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### (On Behalf of the Entire Plaintiff Class)

47.   Plaintiffs reallege all paragraphs above and incorporate them herein by reference.

48.   Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

49.   Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone

solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

50. Plaintiffs had their residential telephone number registered on the National Do Not Call Registry maintained by the U.S. Government at the time they received the calls complained of from Yelp.

51. Defendants have called Plaintiffs' residential telephone numbers for solicitation purposes without Plaintiff's express permission or an established business relationship on multiple occasions during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

52. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action for violations the national do-not-call registry rules promulgated thereunder.  Plaintiffs may obtain relief in the form of injunctive relief, or Plaintiffs may recover $500.00 for each violation, or both.  If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

/ / /

/ / /

Complaint

WHEREFORE, Plaintiff demands trial by jury;

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);
2. For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

3. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.
4. For costs of suit herein incurred; and
5. For such further relief as the Court deems proper.

DATED: June 6, 2017                           **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
JONATHAN SAPAN