Joshua Briones (SBN 205293)
jbriones@mintz.com
Nicole V. Ozeran (SBN 302321)
nvozeran@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
 AND POPEO P.C.
2029 Century Park East Suite 3100
Los Angeles, CA 90067
Telephone: 310-586-3200
Facsimile: 310-586-3202

Claire C. Newland (SBN 301017)
ccnewland@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
 AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415-432-6000
Facsimile: 415-432-6001

Attorneys for Defendant
Yelp Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>YELP INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:17-cv-03240-JD<br><br>**DEFENDANT YELP INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing:<br>Date: April 5, 2018<br>Time: 10:00 a.m.<br>Dept.: 11<br>Judge: Honorable James Donato<br><br>Complaint Filed: June 6, 2017 |

**PLEASE TAKE NOTICE** that on April 5, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the above-referenced Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, Defendant Yelp Inc. ("Defendant") will and hereby does move pursuant to Rule 56 of the Federal Rules of Civil Procedure for entry of an order of summary judgment dismissing the Plaintiff's Complaint in its entirety.

Defendant's motion seeks dismissal of Plaintiff Jonathan Sapan's ("Plaintiff") Complaint in its entirety on the basis that Defendant's calls to Plaintiff do not violate the Telephone Consumer Protection Act, as Plaintiff and Defendant have an established business relationship based on their publisher-subscriber relationship and the numerous transactions that took place between the Parties, including Plaintiff's repeated posting of reviews on Yelp business pages, Plaintiff's use of Yelp's messaging system, Plaintiff's reporting of users' reviews to Yelp, and Plaintiff's editing of Yelp business pages. These transactions occurred within eighteen months prior to Yelp's calls to Plaintiff. Therefore, as no triable issue of material fact exists, Defendant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a).

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ian MacBean, the exhibits filed in support thereof, the concurrently filed Proposed Order, the pleadings on file in this action, and any additional evidence and argument that may be presented before or at the hearing of this Motion.

Dated: February 28, 2018

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

*/s/ Nicole V. Ozeran*
By:  Joshua Briones
     Nicole V. Ozeran
     Claire C. Newland
     Attorneys for Defendant Yelp Inc.

74572348v.3

-1-

# **TABLE OF CONTENTS**

**Page(s)**

I. ISSUES TO BE DECIDED ..................................................................................................1

II. INTRODUCTION ...............................................................................................................1

III. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS ...............................3

    A. Yelp's Business Model ............................................................................................3

    B. Tierrasanta Pro Roofing...........................................................................................3

    C. Plaintiff's Yelp User Account..................................................................................4

IV. SUMMARY JUDGMENT STANDARD ...........................................................................6

V. YELP'S CALLS TO PLAINTIFF DO NOT VIOLATE THE TCPA BECAUSE PLAINTIFF HAS AN ESTABLISHED BUSINESS RELATIONSHIP WITH YELP......7

    A. An EBR Does Not Have to Be Financial.................................................................8

    B. Yelp And Plaintiff Have A Publisher-Subscriber Relationship...............................9

    C. Plaintiff Transacted With Yelp Within 18 Months Prior To Yelp's Calls ............10

    D. The EBR Was Never Terminated ..........................................................................11

VI. CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................................ 6

*Carnet's, Inc. v. Hammond*,
  610 S.E.2d 529 (GA Sup. Court, March 14, 2005) ................................................................. 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................ 6

*Fair Hous. Council v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ................................................................................................. 9

*First Nat'l Bank of Arizona v. Cities Serv. Co.*,
  391 U.S. 253 (1968) ................................................................................................................ 6

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ................................................................................................. 9

*Levitt v. Yelp! Inc.*,
  No. C-10-1321 EMC, 2011 U.S. Dist. LEXIS 124082 (N.D. Cal. Oct. 26, 2011) ................... 9

*Oja v. United States Army Corps of Eng'rs*,
  440 F.3d 1122 (9th Cir. 2006) ............................................................................................... 10

*Surrell v. Cal. Water Serv. Co.*,
  518 F.3d 1097 (9th Cir. 2008) ................................................................................................. 6

*Van Patten v. Vertical Fitness Grp., LLC*,
  No. 12-cv-1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845
  (S.D. Cal. Nov. 3, 2013) .......................................................................................................... 8

*Yelp Inc. v. Superior Court*,
  17 Cal. App. 5th 1 (Cal. App. 2017) ....................................................................................... 9

**Statutes**

47 U.S.C. § 227(a)(2) ............................................................................................................ 1, 7

47 USCS § 227(c)(3) ................................................................................................................ 7

47 C.F.R. § 64.1200(f)(5) ..................................................................................................... 1, 7

47 CFR 64.1200(c)(2)(ii), (iii), (e) ........................................................................................... 7

Cal. Civ. Code § 1605 .............................................................................................................. 9

# TABLE OF AUTHORITIES
(C*ontinued*)

**Page(s)**

**Statutes**

Fed. R. Civ. P. Rule 56(d) ................................................................................................................ 6

Fed. R. Civ. P. 56(e) ........................................................................................................................ 6

**Other**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991*, 7 FCC Rcd 8752 (1992) ...................................................................... 8, 10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991*, 18 F.C.C. Rcd. 14014 (2003) ................................................................. 6

## I. ISSUES TO BE DECIDED

1. Plaintiff created a Yelp user account in April 2013, at which time he agreed to Yelp's Terms of Service. He has been an active Yelp user since that time. On Yelp he has visited hundreds of business pages, posted dozens of reviews, invited users to be friends with him on the platform, used Yelp's messaging system to correspond with users and businesses, flagged other users' reviews, suggested edits to various Yelp business pages, and agreed to Yelp's Terms of Service again each time he logged into his account. Does Plaintiff's ongoing relationship with Yelp, governed by Yelp's Terms of Service, form an established business relationship, as defined by 47 C.F.R. § 64.1200(f)(5) and 47 U.S.C. § 227(a)(2), between the Plaintiff and Yelp?

2. The Federal Communications Commission identified a publisher-subscriber relationship as an example of an established business relationship that provides an exception to liability under the Telephone Consumer Protection Act. Do Yelp makes content available to its users on its website, mobile applications, and through email, and (2) Plaintiff has a Yelp user account which he uses to both access, as well as contribute to, the content published by Yelp?

3. Was the parties' established business relationship terminated prior to Yelp's calls to Plaintiff?

## II. INTRODUCTION

Yelp is an online platform that enables consumers to connect with local businesses and one another. On Yelp, users can write reviews, add photos, and contribute other information about local businesses, providing valuable information to other users and the businesses themselves. Plaintiff Jonathan Sapan ("Plaintiff") has been an active registered Yelp user since April 2013. He has authored and posted dozens of Yelp reviews, been active on Yelp on hundreds of days over several years, reported other users' reviews to Yelp when he felt that they violated Yelp's policies, and even updated factual information that he believed to be incorrect on Yelp's business pages. On several occasions prior to bringing this lawsuit, Plaintiff also visited the Yelp page for a local business called Tierrasanta Pro Roofing.

1    Tierrasanta Pro Roofing ("Tierrasanta") is (or was) a roofing company in San Diego,
2  California. Its Yelp page, created on November 8, 2011, has had little activity since its creation. In
3  an effort to determine if Yelp had the correct information for Tierrasanta, and to determine whether
4  the business was interested in updating its Yelp business page (for example, adding photos or
5  information about Tierrasanta's services to make it more useful for consumers), Yelp made six
6  phone calls to the phone number that was publically listed on Tierrasanta's Yelp page in early 2017.
7  Only the sixth and last call was answered.

8    By 2017, however, unbeknownst to Yelp the phone number that was listed on the
9  Tierrasanta Yelp business page (and in its corresponding account entry in Yelp's Salesforce.com
10 customer relationship management software) allegedly had been obtained by Plaintiff. Plaintiff
11 now asserts a TCPA claim under Section 64.1200(c)(2) based on these six calls.[1] However, Yelp's
12 calls to Plaintiff do not create any basis for liability due to the parties' extensive ongoing business
13 relationship.

14    Plaintiff and Yelp have had an established business relationship since April 2013, when
15 Plaintiff registered for his Yelp account, which creates an exception to liability. Plaintiff used his
16 Yelp account regularly, leaving dozens of reviews and even visiting Yelp just days before Yelp's
17 employee called the number Yelp had listed for Tierrasanta (as well as after this lawsuit was filed).
18 Plaintiff never terminated his business relationship with Yelp. Therefore, Yelp's calls to him did
19 not violate the TCPA.

20    Plaintiff has no viable claims against Yelp and this Motion for Summary Judgment should
21 be granted.

---

[1] Plaintiff alleges that his number has been registered on the Do Not Call Registry since August 17, 2013 (Complaint, ¶ 19) and that Yelp's calls to him over the course of three months violated the TCPA. (*Id*., ¶ 24.)

## III. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

### A. Yelp's Business Model

Yelp, founded in 2004, owns and operates Yelp.com, a popular social networking and search website, and related mobile application (collectively, "Yelp") for users to share information about their communities. Declaration of Ian MacBean ("MacBean Decl."), ¶ 3. Yelp, among other things, provides and publishes a forum for members of the public to read and write reviews. *Id*. Yelp also offers accounts to businesses, which allow businesses to provide additional information about themselves, message reviewers, post public comments in response to reviews, and view statistics about their Yelp page (*i.e.* how many people viewed their Yelp page or phoned them through Yelp's mobile application). *Id*. at ¶ 4. Information regarding these accounts is available on Yelp at https://biz.yelp.com/. *Id*.

As of September 30, 2017, users posted over 142 million reviews to Yelp. *Id*. at ¶ 5. As measured by Google Analytics, Yelp had an average of approximately 84 million monthly unique visitors access Yelp through desktop computers and approximately 74 million unique visitors through its mobile website, during the third quarter of 2017. *Id*. During this time, Yelp also received about 30 million unique visitors through its mobile application. *Id*.

Yelp's business is based on the helpfulness to consumers of the information that it publishes. Therefore, Yelp dedicates time to get businesses familiar with Yelp and confirm that their Yelp pages are accurate. *Id*. at ¶ 6. Yelp also separately verifies such information through its own internal processes. *Id*.

### B. Tierrasanta Pro Roofing

Tierrasanta apparently is (or was) a roofing company in San Diego, California. On November 8, 2011, a registered Yelp user added the Yelp business page for Tierrasanta, including the phone number (858) 324-9001. MacBean Decl., ¶¶ 7, 8, Ex. A. The Yelp business page is publicly available on Yelp's website at https://www.yelp.com/biz/tierrasanta-pro-roofing-san-diego (though it currently cannot be located through a general search of Yelp as it has been deindexed). *Id.* at ¶ 7. Tierrasanta's page has no photos, reviews, or ratings on Yelp. *Id*. at ¶ 7, Ex. A.

### C. Plaintiff's Yelp User Account

Plaintiff created his own Yelp account on April 28, 2013, and agreed to Yelp's Terms of Service[2] and Privacy Policy[3] at that time, and during subsequent visits. MacBean Decl., ¶¶ 9 – 11, 17, Exs., B, H.

Plaintiff is an active Yelp user, who accesses Yelp regularly, has written dozens of reviews, used Yelp's direct messaging feature, voted on reviews, invited other users to connect with him on Yelp, received various emails from Yelp, and recommended edits to existing Yelp business pages. *Id.* at ¶¶ 9, 17 - 27, Exs. B, H – L. Plaintiff was active on Yelp's website and/or mobile application on 486 separate dates between April 28, 2013 and October 3, 2017. *Id.* at ¶ 18. Plaintiff also chose to receive certain regular emails from Yelp, such as emails notifying him when other users sent him messages or compliments, emails notifying him when someone sent him a Friend Request on Yelp, emails notifying him about "Yelp Tips and Tricks," and emails informing him of the status of his edits to business pages on Yelp. *Id.* at ¶ 26, Ex. H.

Specifically, Plaintiff used Yelp to message other users or businesses (including to advance Mr. Sapan's own commercial interests) on the following dates:

- January 22, 2016,
- January 17, 2016,
- April 20, 2015,
- April 15, 2015,
- March 1, 2015,
- January 18, 2015 (twice that day), and
- March 26, 2015.

*Id.* at ¶ 22, Ex. K.

Additionally, Plaintiff reported other users' reviews to Yelp for possible violations of Yelp's Terms of Service on the following dates:

- September 19, 2016 (two reports made),
- March 1, 2015,
- March 25, 2014 (two reports made),

---

[2] MacBean Decl., ¶ 12, Ex. C.

[3] MacBean Decl., ¶¶ 13-16, Exs. D - G.

- August 19, 2013,
- June 4, 2013, and
- May 23, 2013.

*Id*. at ¶ 23, Ex. H.

Plaintiff also posted 42 reviews for various businesses across the United States on the following dates:

- February 28, 2016,
- February 24, 2016,
- January 30, 2016,
- January 20, 2016,
- January 16, 2016 (two businesses reviewed),
- April 20, 2015,
- April 7, 2015,
- March 1, 2015,
- September 30, 2014 (four businesses reviewed),
- August 19, 2013,
- December 20, 2013,
- November 25, 2013,
- October 25, 2013,
- September 30, 2013,
- September 16, 2013,
- August 19, 2013 (three businesses reviewed),
- August 2, 2013 (three businesses reviewed),
- July 31, 2013 (two businesses reviewed),
- July 25, 2013,
- July 22, 2013,
- July 1, 2013 (seven businesses reviewed),
- June 28, 2013 (four businesses reviewed), and
- April 28, 2013.

*Id*. at ¶ 19, Ex. H.

And, between 2013 and 2015, Plaintiff added or edited information about four different businesses on Yelp through his registered Yelp account, on the following dates:

- June 28, 2013,
- September 16, 2013,
- October 20, 2013,
- April 20, 2015, and
- April 27, 2015.

*Id*. at ¶ 25, Ex. L.

| | |
|---|---|
| 1 | Moreover, on five separate occasions Plaintiff even visited Tierrasanta's Yelp business page, |
| 2 | which displayed the phone number he now alleges belongs to him. *Id*. at ¶ 24. However, despite |
| 3 | plainly being aware that Yelp displayed his phone number in association with that roofing business, |
| 4 | and having knowledge of how to suggest edits to the page that would have removed his number, |
| 5 | Plaintiff never proposed deleting or revising the information on the Tierrasanta business page.[4] |
| 6 | *Id*. at ¶ 25. Plaintiff never contacted Yelp to terminate his Yelp account, and he did not otherwise |
| 7 | inform Yelp of any listing error or other concerns that he had with his phone number allegedly |
| 8 | being publicly listed on Yelp's website. *Id*. at ¶¶ 25, 27 – 28, Ex. L. |

**IV.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where no genuine issues of material fact exist and a party is entitled to prevail in the case as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

The burden then shifts to the nonmoving party to "go beyond the pleadings"—using affidavits, depositions, answer to interrogatories, or other means—to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also *Anderson*, 477 U.S. at 248. The nonmoving party must present "significant probative evidence tending to support the complaint." *First Nat'l Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 290 (1968). "[F]acts essential to justify its opposition" are required. See Fed. R. Civ. P. Rule 56(d). "Conclusory statements without factual support are insufficient to defeat a motion for summary judgment." *Surrell v. Cal. Water Serv. Co*., 518 F.3d 1097, 1103 (9th Cir. 2008).

---

[4] Yelp users can easily suggest edits to information on Yelp business pages, which are reviewed and implemented by moderators. *See* https://www.yelp-support.com/article/How-do-I-suggest-changes-to-the-general-business-info?l=en_US%20-%20yelp.com

-6-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YELP INC.'S
MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:17-cv-03240-JD

## V. YELP'S CALLS TO PLAINTIFF DO NOT VIOLATE THE TCPA BECAUSE PLAINTIFF HAS AN ESTABLISHED BUSINESS RELATIONSHIP WITH YELP

Yelp's calls to Plaintiff do not give rise to a TCPA violation. The TCPA prohibits any entity from initiating a telephone solicitation to a residential or cellular telephone number that is registered on the national do-not call registry, unless the entity has prior express written consent to contact the consumer or has an established business relationship (an "EBR") with the consumer. 47 CFR 64.1200(c)(2)(ii), (iii), (e); 47 USCS § 227(c)(3); *FCC Report and Order, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14018-14028, ¶¶ 23, 26, 42, 124 (2003) ("2003 FCC Order") ("We agree with the majority of industry commenters that an exemption to the national do-not-call list should be created for calls to consumers with whom the seller has an established business relationship.").

The TCPA defines an EBR as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . ." 47 C.F.R. § 64.1200(f)(5); 47 U.S.C. § 227(a)(2). "The 18-month time period runs from the date of the last payment or transaction with the company . . . ." 2003 FCC Order, ¶ 113. Plaintiff and Yelp have an established business relationship; Plaintiff registered for a Yelp account (MacBean Decl., ¶ 9), agreed to Yelp's Terms of Service and Privacy Policy (*id*. at ¶¶ 11-16), and over the years has been an active Yelp user, who has created dozens of reviews for various businesses, reported other users' reviews to Yelp, made edits to Yelp business pages, opted to receive various emails from Yelp, and viewed and continues to view Yelp pages. *Id*. at ¶¶ 17-27.

Yelp's established business relationship with Plaintiff creates an exception to liability under the TCPA. Therefore, Yelp's calls to Plaintiff did not violate the TCPA and Yelp's Motion for Summary Judgment should be granted.

-7-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YELP INC.'S MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:17-cv-03240-JD

### A. An EBR Does Not Have to Be Financial

The FCC concluded that the relationship that is the basis of an EBR should be defined broadly. It does not have to be financial.

> The relationship may be formed with or without an exchange of consideration on the basis of an inquiry, application, **purchase or transaction** by the residential telephone subscriber regarding products or services offered by the telemarketer. A broad definition of the business relationship can encompass a wide variety of business relationships (e.g. publishers with subscribers, credit agreements) without eliminating legitimate relationships not specifically mentioned in the record. **Accordingly, we reject proposals to define a business relationship by reference to consideration** or to a period of time because such narrow definitions may exclude legitimate categories of business relationships.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd 8752, 8771, ¶ 35 (1992) ("1992 FCC Order") (emphasis added); *Common Carrier Scorecard, Consumer Information About Telephone-Related Issues*, November 1998, www.fcc.gov/Bureaus/Common_Carrier/Reports/scard98.pdf, at 22 ("You have an established business relationship with a person or entity if you have made an inquiry, application, purchase, or transaction regarding products or services offered by such person or entity"); *Van Patten v. Vertical Fitness Grp., LLC*, No. 12-cv-1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845, *23 (S.D. Cal. Nov. 3, 2013); *see also Carnet's, Inc. v. Hammond*, 610 S.E.2d 529, 531-532 (GA Sup. Court, March 14, 2005).

The FCC makes it clear that parties do not need to exchange money in order to have a business relationship—"inquiry, application, purchase **or** transaction." 1992 FCC Order, pg. 48, ¶ 35 (emphasis added). Not only does the FCC distinguish a purchase from a transaction by using the term "or," but the FCC also states that no consideration is necessary at all in order to have a business relationship. *Id.* Therefore, no payment, monetary or otherwise is necessary to have a business relationship. Regardless, in the instant matter, consideration was exchanged—each time Plaintiff used Yelp's services (a benefit to which he was not lawfully entitled), he in return agreed

-8-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YELP INC.'S
MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:17-cv-03240-JD

to Yelp's Terms of Service. Cal. Civ. Code § 1605 (defining "good consideration" as including "[a]ny benefit conferred . . . to which the promisor is not lawfully entitled").

Plaintiff and Yelp confirmed their business relationship, governed by Yelp's Terms of Service, when Plaintiff originally signed up for Yelp's services, and each time that he subsequently logged in or used Yelp's services. Indeed, when he signed up and each time he logged into Yelp he expressly agreed to Yelp's Terms of Service, which set out the terms of the parties' relationship.[5] MacBean Decl., ¶¶ 10-16. A business relationship, therefore, exists between the parties.

### B. Yelp And Plaintiff Have A Publisher-Subscriber Relationship

Yelp is an online publisher that displays reviews, photos, and other information contributed by its third-party users, and sends emails to users like Plaintiff. Indeed, Courts have repeatedly noted Yelp's role as a publisher. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) (discussing Yelp's immunity for claims "against Yelp in its capacity as a publisher"); *Levitt v. Yelp! Inc.,* No. C-10-1321 EMC, 2011 U.S. Dist. LEXIS 124082, at *28 (N.D. Cal. Oct. 26, 2011) (discussing "Yelp's publishing conduct"), *aff'd* 765 F.3d 1123 (9th Cir. 2014); *Yelp Inc. v. Superior Court*, 17 Cal. App. 5th 1 (Cal. App. 2017) (discussing Yelp's role as a publisher and rejecting "contention website hosts that publish anonymous content must be distinguished from newspapers that publish anonymous content"), citing *Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623, 630 (Cal. App. 2017) (noting Glassdoor, an online review company like Yelp, was the "acknowledged publisher of the speech at issue"). Yelp is publisher, and, as the user of a registered Yelp account who regularly uses Yelp, including to read and write reviews concerning local businesses, Plaintiff is a subscriber to Yelp. *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) ("subscribers" include users of the site's free service).

---

[5] Yelp's Terms of Service make this clear at the outset, as they state: "These terms and conditions (the "Terms") govern your access to and use of Yelp's websites and mobile applications that link to or reference these Terms ("Site"). By accessing or using the Site, you are agreeing to these Terms and concluding a legally binding contract with Yelp Inc., a Delaware corporation headquartered in San Francisco, California ("Yelp"). Do not access or use the Site if you are unwilling or unable to be bound by the Terms."

-9-

The FCC specifically identifies the relationship between a publisher and subscriber as an example of a preexisting business relationship that can be the source of an exception under the TCPA. 1992 FCC Order, pg. 48, ¶ 35 (1992). It is entirely irrelevant that the FCC does not specify any difference between print or online publishers, as "published web content is functionally identical to published traditional print media and, accordingly, Internet publication should be considered 'published' in the same manner as is a print edition." *Oja v. United States Army Corps of Eng'rs*, 440 F.3d 1122, 1130 (9th Cir. 2006).

Therefore, the publisher-subscriber relationship between Plaintiff and Yelp further creates an EBR between the parties and excludes Yelp from liability under the TCPA.

### C. Plaintiff Transacted With Yelp Within 18 Months Prior To Yelp's Calls

Within 18 months prior to each of Yelp's calls to Plaintiff, Plaintiff engaged in transactions with Yelp, substantiating their EBR. Yelp's last call to Plaintiff occurred on March 1, 2017. Complaint, ¶ 24. Since October 1, 2015, which is 18 months before March 1, 2017, Plaintiff:

- used Yelp to message other users or businesses on January 22, 2016 and January 17, 2016 (MacBean Decl., ¶ 22, Ex. K);
- made two reports to Yelp regarding other users' reviews on September 19, 2016 (*id*. at ¶ 23, Ex. H);
- posted reviews for six businesses over five sessions on February 28, 2016, February 24, 2016, January 30, 2016, January 20, 2016, and January 16, 2016 (*id*. at ¶ 19, Ex. H); and,
- logged into and viewed Yelp listings hundreds of times, including as recently as January 30, 2018. *Id.* at ¶¶ 18, 27, Ex. H.

Plaintiff engaged in each of these actions as a registered user of Yelp's service, pursuant to his acceptance of Yelp's Terms of Service. *Id*. at ¶¶ 9-12, Exs. B, C, H. He could not have taken these actions unless he had been a registered user of Yelp. *Id*. at ¶ 10. On May 20, 2016 and February 23, 2017, he even visited the Tierrasanta Pro Roofing Yelp page where he saw his phone number listed for the business (*id.* at ¶ 24); yet, he declined to change it despite plainly knowing

-10-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YELP INC.'S
MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:17-cv-03240-JD

how to edit such information on Yelp—he previously made similar edits to other pages in the past.[6] *Id*. at ¶ 25, Ex. L. Plaintiff plainly engaged in an ongoing business relationship with Yelp within the 18 months preceding each of the calls made to Plaintiff by Yelp.

### D. The EBR Was Never Terminated

Yelp's Terms of Service contain an express provision allowing registered users to terminate their accounts with Yelp. MacBean Decl., ¶ 12, 28, Ex. C, Section 14. Nonetheless, Plaintiff has never terminated his EBR with Yelp, nor has he asked Yelp to not contact him. *Id.* at ¶ 27-28, Ex. H. Though Yelp called Plaintiff's phone number on six (6) occasions, Plaintiff only answered the last call on March 1, 2017. *Id*. at ¶ 29, Ex. M. At this time, Plaintiff did not request to be placed on Yelp's Do Not Call list, nor did he ask that Yelp not contact him again. *Id.* In fact, Plaintiff did not even inform Yelp that he was unassociated with Tierrasanta, or that the number was residential. *Id.*

Yelp and Plaintiff had an ongoing business relationship that was never terminated. Therefore, Yelp's calls to Plaintiff fall within an exception to the TCPA, and there is no violation upon which Plaintiff can now assert a claim. Plaintiff's claims should be dismissed.

## VI. CONCLUSION

Though fully aware of how to edit business listings on Yelp, as he had done so on multiple prior occasions, Plaintiff never sought to remove his number from the Tierrasanta Yelp page, or otherwise inform Yelp of the error. Instead, Plaintiff frequented the Tierrasanta Yelp page, saw his number listed on the public site, and sat back and waited for Yelp to contact him. Incredibly, even when Yelp finally spoke with Plaintiff, Plaintiff still did not tell Yelp that his number was not associated with Tierrasanta.

Yelp's calls to Plaintiff did not begin until after Plaintiff created a Yelp account, left dozens of reviews for various businesses, used Yelp's social networking feature, flagged reviews left by

---

[6] Though Plaintiff clearly knows how to use, and does use the Yelp platform regularly, he made no attempt to inform Yelp of his number's appearance on the Tierrasanta Pro Roofing Yelp page; instead, he waited for Yelp to contact the number listed for the business (Plaintiff's phone number) in order to establish this instant TCPA claim.

-11-

others, made edits to business listings, and corresponded with businesses/other users via Yelp's messaging feature. The parties had an established business relationship, based both on Plaintiff's consistent and routine use of various Yelp features available only to registered users, as well as their publisher-subscriber relationship. Plaintiff never terminated this business relationship. In fact, Plaintiff continues to use Yelp.

Therefore, Defendant requests that this Court grant Yelp's Motion for Summary Judgment and dispose of this matter in its entirety.

Dated: February 28, 2018

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

*/s/ Nicole V. Ozeran*

By:  Joshua Briones
     Nicole V. Ozeran
     Claire C. Newland
     Attorneys for Defendant Yelp Inc.