Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-886-0252
Email: JustinP@prato-reichman.com

Attorneys for Plaintiff
and the Proposed Class

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SAPAN,<br>individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br>vs.<br><br>YELP, INC., a Delaware Corporation,<br><br>Defendant. | Case No.:  3:17-cv-03240<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. James Donato<br>Motion Date: April 5, 2018<br>Motion Time: 10:00 a.m. |

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………4

II. STATEMENT OF FACTS & PROCEDURAL HISTORY……………...4

III. STANDARD OF REVIEW……………………………………………...5

IV. ARGUMENT………………………………………………………………6

A. The Parties Never Had Any Two Way Communications………………………7

B. To The Extent One May Communicate with An Automated Website, Such Communication Cannot Be Voluntary Because It Is Automated………………….8

C. Mr. Sapan Never Gave Yelp His Phone Number So They Could Not Have Had Voluntary Two-Way Communications Giving Rise To Implied Consent…………9

D. Yelp's Terms Of Service Do Not Constitute a Business "Transaction" And Are Unenforceable,………………………………………………………………10

E. Yelp Carefully Ignores That It Has Previously Invoked Publisher Status Specifically To Evade Liability For What Its Users Do On Its Website………….12

F. The fact that Mr. Sapan reviewed the Tierrasanta Pro Roofing is irrelevant to any defense and should be struck as irrelevant…………………………………13

G. If Plaintiff's Objections are sustained, the Defendant will not meet its burden.14

V. CONCLUSION………………………………………………………….14

# **TABLE OF AUTHORITIES**

Supreme Court

*Bailey v. United States*, 516 U.S. 137 (1995)……………………………………….11

*Hibbs v. Winn*, 542 U.S. 88 (2004)………………………………………. ………..11


Circuit Courts

*Ambat v. City & County of San Francisco*, 757 F3d 1017 (9th Cir. 2014)…….…..5

*Cortez v. Skol*, 776 F.3d 1046 (9th Cir. 2015)……………………………………….13

*Kimzey v. Yelp! Inc*., 836 F.3d 1263 (9th Cir. 2016)……….….…………….......12

*Nguyen v Barnes & Noble, Inc*., 763 F.3d 1171 (9th Cir. 2014)……….……….10

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) …….9

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2nd Cir. 2002)…….………10

*Van Patten v. Vertical Fitness Group*, 847 F.3d 1037 (9th Cir. 2017)…..5


Statutes

Telephone Consumer Protection Act of 1991, 47 U.S.C § 227………………….4,6


Rules, Regulations & Miscellaneous

Federal Rule of Civil Procedure 56(a). …………………………………………….5

47 C.F.R. § 64.1200…………………………………………………………………5-7,9


Federal Communications Commission Orders

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, 7 FCC Rcd. 8752, 8771, ¶ 35 (1992)……………..….…12

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008)………………………………………..5

# I. INTRODUCTION

This opposition to Defendant's Motion for Summary is filed by named Plaintiff Jonathan Sapan ("Mr. Sapan") and the putative class (collectively, "Plaintiffs"). Defendant has not met its burden under Federal Rule of Civil Procedure ("F.R.C.P.") 56 to entitle them to summary judgment. Defendant has not offered any evidence showing there was any voluntary two-way communication, that Plaintiff ever gave Defendant a phone number to call so they could have a voluntary two way communication, nor even show the parties had any relationship based on business required to show an "established business relationship" within the meaning of the Telephone Consumer Protection Act ("TCPA"). Defendant's entire motion appears to be an attempt to 'poison the well' by introducing irrelevant facts out of context and the motion should be denied.

# II. STATEMENT OF FACTS & PROCEDURAL HISTORY

On or about November 8, 2011, some person or entity created a Yelp listing for Tierrasanta Pro Roofing. [Declaration of Ian MacBean ("MacBean Decl") pg. 2 ¶8]. Whomever created this listing, listed the phone number for it as 858-324-9001. [Id.] Regardless if this listing was a real ever a real business, the phone number 858-324-9001 was available and was assigned to Mr. Sapan on or about August 17, 2013. [Declaration of Jonathan Sapan ("Sapan Decl") pg 2, ¶ 2]. Mr. Sapan placed the number on the National Do-Not-Call Registry ("DNC Registry") [Sapan Decl. pg 3, ¶ 7]. The DNC Registry is a database set up by the Federal government containing phone numbers of people who do not wish to receive telemarketing calls. [Sapan Decl. pg 4, ¶17]. Mr. Sapan hates telemarketing and has placed all of his numbers on the DNC Registry.

During the following years Mr. Sapan was made aware that Tierrasanta Pro Roofing had his phone number posted on the internet by defendants in other TCPA actions trying to claim Mr. Sapan was running a business. [Sapan Decl. pg 3, ¶10-

11]. Mr. Sapan then went onto Yelp and looked at the page for Tierrasanta Roofing. [Sapan Decl. pg 3, ¶ 10]. He did not think anything of this as the Internet is notorious for having wrong information. [Sapan Decl. pg 3, ¶14]. Also, he did not contact Yelp about the phone number because he did not want to be accused of trying to tamper with evidence in his ongoing litigation, and that any lawful telemarketer would check the DNC Registry, anyway, so there really was no point to take time out of his busy schedule to fix incorrect information on a website he did not even create. [Sapan Decl. pg 3, ¶ 10-14].

On January 31, 2017, Mr. Sapan received a call from a Yelp telemarketer trying to sell him sell some Yelp advertising and consulting services. [Sapan Decl. pg 2, ¶ 3]. This call was to Mr. Sapan's residential home phone line at 858-324-9001. [Id]. Mr. Sapan did not answer this first call, and the Yelp telemarketer called back several times on February 6, 2017, February 10, 2017, February 16, 2017, February 22, 2017, and March 1, 2017. [Id]. Mr. Sapan has a voicemail for his residential phone line which clearly states his name as the person owning the line, or if the call is forwarded to his cell phone that also has a voicemail which clearly states his name. [Sapan Decl. pg 4, ¶ 19]. Finally, on March 1, 2017, Mr. Sapan answered a call from Yelp. [Sapan Decl. pg 2, ¶ 5]. He found out who was calling, and told if he was interested he would call them back, then hung up. [Id]. Mr. Sapan then initiated this case in order stop Yelp's illegal telemarketing to numbers on the DNC Registry.

### **III. STANDARD OF REVIEW**

The party moving for summary judgment has both an initial burden of production and the ultimate burden of persuading the court that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P 56(a). Because summary judgment is a "drastic device," cutting off a party's right to present its case to a jury, the moving party bears a

"heavy burden" of demonstrating the complete absence of any triable issue of material fact. *Ambat v. City & County of San Francisco*, 757 F3d 1017, 1031 (9th Cir. 2014). Like prior express written consent, the TCPA's established business relationship "is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof. *Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1044 (2017), *citing*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008).

## IV. ARGUMENT

The established business relationship as a TCPA defense to the DNC Registry violation follows a slightly twisting path. The violation for making a "telephone solicitation" to a residential subscriber who put his phone number on the DNC Registry is at 47 C.F.R. § 64.1200(c) & (c)(2).[1] The definition subsection later states that the term "telephone solicitation" call may be exempt if the call is made to any person with whom the caller has an "established business relationship". 47 C.F.R. § 64.1200(f)(14). Perhaps counter intuitively, the "established business relationship" definition is found in above it in subsection (f)(5):

> "The term *established business relationship* for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three

---

[1] The private right of action for violations of these regulations—not at issue in this motion—is at 47 U.S.C. § 227(c).

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

There are essentially two levels of established business relationship, one based on voluntary two-way communication and a purchase or business transaction that grants an 18 month exemption to call and a much narrower 3 month exemption for a callback after a residential phone subscriber makes an inquiry or application regarding the caller's products or services. The predicate throughout is that the parties are engaged in commercial business or that there is an application for commercial products or services.

The more stringent 18 month exemption for parties who have completed a purchase or transaction is the defense at issue here. The elements of forming this business relationship are:

1. "a voluntary two-way communication between a person or entity and a residential subscriber
    a. "with or without an exchange of consideration"
    b. "on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call". *Id*.

The key point is that there has to be a voluntary two-way communication, and the other factors inform what type of communication applies. When viewed in light of the other defense being 'prior express written consent', it is fairly clear this defense covers consent to call that is implied from a business relationship wherein the parties allow otherwise regulated communications.

A. The Parties Never Had Any Two Way Communications

Yelp provides evidence that Mr. Sapan registered on their social media network to communicate reviews with other users, not Yelp itself. [MacBean Decl

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

pg. 2-3 ¶9]. Yelp provides evidence that Mr. Sapan did in fact trade reviews with other people, but did not trade any reviews with any Yelp staff or personnel. [MacBean Decl pg. 6-8 ¶17-28]. Yelp provides evidence that Mr. Sapan sent a few error reports, but no evidence that Yelp ever responded or that even if they had this would lead to a transaction or sale. [Id.] In fact, what Yelp completely fails to provide is any evidence at all that Mr. Sapan and Yelp itself engaged in any voluntary <u>two-way</u> communication.

Mr. Sapan never called Yelp to inquire about their products or services or make any transaction with it—in fact he never gave them his phone number at all, but more on that below. [Sapan Decl. pg 3, ¶ 8-9]. Mr. Sapan never engaged in any back-and-forth communications with Yelp regarding any goods or services in any medium whatsoever, and most certainly never purchased anything nor transacted any business. In fact, Yelp does not even allege it has any products or services for sale to consumers, and therefore had nothing to communicate to Mr. Sapan to form on basis of a transaction or purchase.

Yelp has failed to provide any proof of a voluntary two-way communication because while they have shown Mr. Sapan used to post to Yelp's other users or made complaints, they have failed to show that Yelp communicated back in any way.

B. <u>To The Extent One May Communicate with An Automated Website, Such Communication Cannot Be Voluntary Because It Is Automated</u>

While Yelp's motion utterly fails to address the voluntary two-way communication element of their purported defense, it is foreseeable that Yelp will try to claim that viewing a website is 'two-way' in ridiculously literal and hypertechnical sense based on the technology of how websites are viewed. To the extent Mr. Sapan "communicated" with the Yelp website, all of its reactions are automated. An automated response system cannot do anything voluntarily because

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

computers by their very definition lack volition, and at best this is an issue of fact for the jury to determine.

### C. Mr. Sapan Never Gave Yelp His Phone Number So They Could Not Have Had Voluntary Two-Way Communications Giving Rise To Implied Consent.

The most basic fact in whether the parties have a relationship where marketing calls would be expected or allowed is whether the residential line subscriber gave his phone number to the caller. The other defense, prior express consent, even requires that the writing needed there specifically state the exact number to which consent to call is being given. 47 C.F.R. § 64.1200(c)(2)(ii) ("and includes the telephone number to which calls may be placed"). Thus, it is clear that the "voluntary two-way communication" that gives rise to the business relationship between the parties is calls between them such that it is reasonable to expect the caller would have permission to call again. *See*, 47 C.F.R. § 64.1200(f)(5(ii) (business relationship does not extend to affiliates unless "subscriber would reasonably expect" it to based on the nature of the business transaction), *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (same).

All of Mr. Sapan's use of the Yelp website was done online and he never gave them his phone number. [Sapan Decl. pg. 3, ¶8]. That might well constitute some sort of implied consent or established business relationship as a defense to receiving junk e-mails, but it certainly does not create any course of conduct or pattern of business based on phone calls. In fact, Yelp admits they were not even trying to call Mr. Sapan. [MacBean Decl pg. 9¶26]. Yelp admits that they were trying to call somebody else, not make calls within the ambit of any established business relationship with Mr. Sapan. [Id.]

After Yelp tried to call somebody else, its claim that it had a business relationship with the person it called by mistake smacks of post facto reasoning.

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

No case or legal authority have ever held the established business relationship defense to apply in the absence of previous calls between the parties, there is most certainly no legal authority whatsoever for the notion that there could be an established business relationship in the absence of the residential line subscriber ever giving the caller his phone number.

D. Yelp's Terms Of Service Do Not Constitute a Business "Transaction" And Are Unenforceable,

While Yelp claims its Terms of Service are a 'business' transaction, Yelp's 2012 terms of service, flatly states that mere Yelp user's accounts are "for your personal, non-commercial use only", showing that any business relationship would run afoul of Yelp's own purported rules. [Defendant's MSJ, Ex. C, at 4.D]. Thus, Yelp's own terms of service exhibit, which covers more than half the class period expressly states that user's use of the site be strictly personal, and therefore could not possibly rise to a commercial transaction.

Yelp also claims that the predicate business "transaction" for its established business relationship is that its terms of service are linked in browse-wrap fashion whenever a user logs in. Those terms and conditions all contain a California choice of law clause. The Ninth Circuit has authoritatively ruled that mere links to terms of service and not having any affirmative consent button or box to check fail to give adequate notice and cannot be enforceable contracts under governing California law. *Nguyen v Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014) ("even close proximity of the hyperlink to relevant buttons users must click on--without more--is insufficient to give rise to constructive notice."), *see also*, *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2nd Cir. 2002).

Yelp does not argue that its terms of service constitute a purchase, and absent any binding effect its terms of service cannot constitute a transaction or exchange of promises between the parties. Thus, not only does Yelp lack any

- 10 -

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

voluntary two-way communication, it also has failed to provide any evidence of any purchase or transaction.

While Yelp has previously noted that the established business relationship regulation itself does not require consideration for a transaction it is equally clear from the plain language that transaction means some sort of exchange of goods, services, funds or rights and not just the broadest definition of some mere communicative action. If it were the broad definition of any touch between the parties at all, that would render the lesser three month version of the established business relationship superfluous. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant…" *Hibbs v. Winn*, 542 U.S. 88, 101 (2004), *see also*, *Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.") Thus, the 'transaction' for the established <u>business</u> relationship must necessarily require some sort of <u>business</u> or commercial transaction, and Yelp does not do business with consumers.

A yellow pages user does not "transact business or have voluntary two way communications with the yellow pages whenever he looks up a listing in it, and a Yelp user does not transact business or communicate with Yelp when he does the same or posts a review for other users looking up listings or reviews--they users are communicating with each other, not Yelp. It is the same way with other medium providers like phone companies. One is not communicating with the phone company when they make a call, they are communicating with the call recipient. And even that analogy is far from Yelp since one has to pay a phone company so there is at least a purchase even if the two-way communication with each call. Finally, any such detailed inquiry really is an issue of fact that should be determined by the jury.

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

### E. Yelp Carefully Ignores That It Has Previously Invoked Publisher Status Specifically To Evade Liability For What Its Users Do On Its Website.

Yelp tries to make much of parenthetical dicta in an a thirty-plus year old order giving examples of established business relationships which include "(e.g. publishers with subscribers..)". *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, 7 FCC Rcd. 8752, 8771, ¶ 35 (1992). Yelp studiously ignores that when the order was issued in 1992 the internet was in its infancy. These were the days of 900 baud modems, BBS bullitein boards, and expensive long distance bills for slow text-only computer calls and publisher-subscriber relationship referred to paying subscribers to print publications, which unquestionably give rise to a business relationship because business is being conducted between them.

Yelp also cites to Digital Millennium Copyright Act and Communications Decency Act cases wherein Yelp was allowed to avoid liability for damaging content posted by users because of its role as a mere curator "publisher" rather than a content creator. *See*, *e.g. Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir.) (Communications Decency Act "immunizes providers of interactive computer services against liability arising from content created by third parties [users].").  So, on the one hand Yelp invokes mere "publisher" status to so distance itself from website users as to evade any culpability for what is written on its site but now here Yelp wants to invoke a different meaning of the word publisher to claim it was so close to Mr. Sapan that his mere posting reviews creates such a strong established business relationship that they can evade liability for making junk calls to him even though he never gave them his phone number and they called his number by mistake. Yelp is trying to have it both ways and it makes no logical sense. Either they are a publisher in such close contact with their subscribers that they have a business relationship, or they are a modern internet law defined

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

publisher who is completely immunized from the action of their users specifically because they have no meaningful relationship with them.

F.  <u>The fact that Mr. Sapan reviewed the Tierrasanta Pro Roofing is irrelevant to any defense and should be struck as irrelevant</u>.

Yelp's motion devotes one whole paragraph of its brief Introduction section and one of only two complete paragraphs in its Statement Of Facts to detailing the fact that Mr. Sapan viewed the Tierrasanta Pro Roofing listing which contained the incorrect listing of what is actually Mr. Sapan's number.  Even though what Mr. Sapan viewed is irrelevant to Yelp's contention that mere viewing somehow constitutes transactions between the parties, Yelp reiterates their this point again in argument section C, and then reiterates it yet again in a footnote.

Plaintiff objects to the inclusion of this irrelevant information.  As a legal matter, the court must view the evidence, including all reasonable inferences, in favor of the non-moving party. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).  Mr. Sapan did view the Tierrasanta Pro Roofing listing.  He did so because he had filed a previous individual TCPA case, and the Defendants there, just like Yelp here, cast about looking for defenses after committing the violation and found the listing and tried to assert a defense that Mr. Sapan made the listing to entrap telemarketers.  There is no truth to this and Yelp in this case has certainly not provided any evidence to even suggest that Mr. Sapan has anything to do with the listing.  But, because the issue was raised, Mr. Sapan acted as a prudent and reasonable litigant and did nothing to tamper with evidence and continued to do nothing to avoid any hint or suggestion that he had any connection to the Tierrasanta Pro Roofing listing.  This should not make any difference anyway since legal telemarketers would check the official Do Not Call Registry not some random listing on the internet

Yelp never asked Mr. Sapan why he viewed the listing and did not change it and the answer would have been simple and direct if they had. Yelp probably avoided asking specifically so they could try to argue improper inferences rather than facts in an attempt to bias the Court. But the whole fact in its actual context dispels the formless inference and quite clearly shows that Mr. Sapan had no duty to fix Yelp's problems but most certainly did have a duty to avoid tampering with evidence or make a report that would bring his complete lack of involvement with the listing into question. In any event, in the context of summary judgment, where all inference must be drawn against Yelp, this attempt to include clearly irrelevant facts should be stricken or disregarded in its entirety.

G. If Plaintiff's Objections are sustained, the Defendant will not meet its burden.

The Plaintiff has served objections with this Opposition. Should these objections be sustained and Defendant's evidence excluded, the Defendant will not have evidence to show there is no issue of material fact. Therefore the motion should be denied.

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court deny in its entirety the Defendant's motion for summary judgment.

DATED: March 14, 2018     **PRATO & REICHMAN, APC**

/s/Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
JONATHAN SAPAN,
and the putative class.

Plaintiff's Opposition to Partial Summary Judgment – Points & Authorities

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument as well as all attached documents were served upon all counsel of record in the above entitled and numbered cause on the date listed below.

__X__   Via ECF

Nicole Ozeran, Esq.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

2029 Century Park East, Suite 3100

 Los Angeles, CA 90067

DATED: March 14, 2018                    **PRATO & REICHMAN, APC**

<u>/s/Justin Prato, Esq.</u>
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
JONATHAN SAPAN,
and the putative class.