Justin Prato SBN 246968
Christopher J. Reichman SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-886-0252
Email: JustinP@prato-reichman.com

Attorneys for Plaintiff
and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SAPAN, individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>YELP, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 3:17-cv-03240<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Motion Date: April 19, 2018<br>Motion Time: 10:00 am |

# **TABLE OF CONTENTS**

I.  THE CLASS DEFINITION IS SUFFICIENT . . . . . . 1

II.  RULE 23(a) FACTORS . . . . . . . . 1

  1) The Class Is Numerous . . . . . . . 1

  2) There Is Commonality . . . . . . . 3

  3) Plaintiff Is A Typical Member Of The Proposed Class . . . 3

  4) Plaintiff And His Counsel Will Adequately Represent The Class . 5

    A) "Professional Plaintiff" Is Not A Slur And Does Not Infer

    Untrustworthiness . . . . . . . . 5

    B) Plaintiff Does Not Have Credibility Issues . . . . 6

    C) Counsel Will Fairly And Adequately Represent The Class . . 7

  5) Acertianabilty Is Not Class Certification Factor . . . . 9

III. RULE 23(b) FACTORS . . . . . . . 9

  1) Individual Issues Do Not Predominate . . . . . 9

    A) Do Not Call Registry Eligibility Is Not A Valid Defense Or

    Individualized . . . . . . . . 9

    B) No EBR Exists And If It Does It Will Apply Class-Wide . . 10

    C) No Individualized Inquires Will Predominate As To Prior

    Written Consent . . . . . . . 11

    D) VoIP Numbers Are Protected . . . . . . 12

    E) Individualized Inquires As To Any Arbitration Clauses

    Are Speculative . . . . . . . 13

    F) No Individualized Inquires Will Be Necessary To Determine

    If Yelp Called More Than Once In A Year . . . . 13

  2) The Class Is Manageable, And Class Wide Adjudication Is Superior . 13

IV. CONCLUSION . . . . . . . . 14

REPLY RE CLASS CERTIFICATION MOTION

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Supreme Court</u>

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)    .    .    .    .    .    .    .    4

<u>Circuit Courts</u>

*Appleton Elec. Co. v. Advance-United Expressways*,
    494 F.2d 126 (7th Cir 1974)    .    .    .    .    .    13-14

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
    747 F.3d 489 (7th Cir. 2014)    .    .    .    .    .    .    6

*Bridgeview Health Care Ctr., Ltd. v. Clark*,
    816 F.3d 935 (7th Cir. 2016)    .    .    .    .    .    .    3

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017)    .    .    .    .    .    .    9

*Golan v. Veritas Entm't, LLC*,
    788 F.3d 814 (8th Cir. 2015)    .    .    .    .    .    .    3

*Meyer v. Portfolio Recovery Associates, L.L.C.*,
    707 F.3d 1036 (9th Cir. 2012)    .    .    .    .    .    5, 11-13

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006)    .    .    .    .    .    .    4-7

*Osorio v. State Farm Bank*, F.S.B.,
    746 F.3d 1242 (11th Cir. 2014) .    .    .    .    .    .    13

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009)    .    .    .    .    .    11-12

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
    323 F.3d 32 (1st Cir. 2003)    .    .    .    .    .    .    14

iii

*Susinno v. Work Out World Inc.*,

    862 F.3d 346 (3rd Cir. 2017) . . . . . . . 13

<u>District Courts</u>

*Agne v. Papa John's Int'l, Inc.*,

    286 F.R.D. 559 (W.D. Wash. 2012) . . . . . . 3, 14

*Buycks–Roberson v. Citibank Fed. Sav. Bank*,

    162 F.R.D. 322 (N.D.Ill.1995) . . . . . . . 2

*Cunningham v. Rapid Response Monitoring Services, Inc.*,

    251 F.Supp.3d 1187 (M.D. Tenn. 2017) . . . . . 4-7

*Ellsworth v. U.S. Bank, N.A*,

    2014 WL 2734953 (N.D. Cal. 2014) . . . . . . 1

*Harris v. Vector Marketing Corp.*,

    753 F.Supp.2d 996 (N.D. Cal. 2010) . . . . . . 7

*In re Rubber Chem. Antitrust Litig.*,

    232 F.R.D. 346 (N.D. Cal. 2005) . . . . . . 1-2

*Lapin v. Goldman Sachs & Co.*,

    254 F.R.D. 168 (S.D.N.Y. 2008) . . . . . . 7

*Miller v. Spring Valley Properties*,

    202 F.R.D. 244 (C.D. Ill. 2001) . . . . . . 2

*Stoops v. Wells Fargo Bank, N.A.*,

    197 F. Supp. 3d 782, 790 (2016) . . . . . . 4

*Sweet v. Pfizer*,

    232 F.R.D. 360 (C.D. Cal. 2005) . . . . . . 8

*Whitaker v. Bennett Law, PLLC*,

    2014 WL 5454398 (S.D. Cal. 2014) . . . . . . 3

/ / /

REPLY RE CLASS CERTIFICATION MOTION

<u>Federal Communications Commission Orders</u>

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,18 FCC Rcd 14014, at ¶ 112 (2003) . . . 10

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, at ¶ 33 (2012) . . 11-12

<u>Statutes</u>

47 U.S.C. §§ 151-622 . . . . . . . . . 9

47 U.S.C. § 227 . . . . . . . . 3-4, 6-7, 9, 12

<u>Rules & Regulations</u>

Fed. Rule Civ. Proc. 23 . . . . . . . . 1, 3, 9, 14

47 C.F.R. §§ 0.1-69.809 . . . . . . . . 9

47 C.F.R. § 64.1200 . . . . . . . . 9

REPLY RE CLASS CERTIFICATION MOTION

# **REPLY**

Plaintiff, Mr. Jonathan Sapan ("Plaintiff" or "Sapan") files this reply brief in response to Defendant, Yelp, Inc.'s ("Defendant" or "Yelp") Opposition to Plaintiff's Motion for Class Certification ("Opposition"). In its Opposition, the Defendant largely tries to attack the character of Mr. Sapan and his counsel because they have no compelling factual or legal arguments to oppose certification. The opposition is composed of improper character attacks, non-binding and inapplicable legal authority, hide the ball evidence games and unconvincing arguments as to why a class should not be certified in this case. This Court should ignore those arguments and grant Plaintiff's Motion for Class Certification.

## **I. THE CLASS DEFINITION IS SUFFICIENT**

The Plaintiff's class definition in this case is sufficient. It uses objective criteria to indentify the class members and has clear parameters for determining membership. *Ellsworth v. U.S. Bank, N.A*, 2014 WL 2734953 (N.D. Cal. 2014). As to changing the class definition between the Complaint and the Motion for Certification, the Court has complete discretion to change the class definition at any time. See, F.R.C.P. 23(c)(1)(C) (F.R.C.P. 23 is "Rule 23" hereinafter).

## **II. RULE 23(a) FACTORS**

### **1) The Class Is Numerous**

Plaintiff need not to state the exact number of potential class members, nor is a specific number of class members required for numerosity. *See*, *In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005). The Plaintiff does

not need to show the exact number of class members, and can rely on a reasonable estimate. *Miller v. Spring Valley Properties*, 202 F.R.D. 244 (C.D. Ill. 2001). "[A]lthough the one who asserts the class must show some evidence or reasonable estimate of the number of class members, if a plaintiff cannot provide precise numbers, a good faith estimate is sufficient to satisfy the numerosity requirement where it is difficult to assess the exact class membership." *Id.*, *quoting*, *Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 329 (N.D.Ill.1995). In his motion, Plaintiff relies on the vast number of calls made by Yelp, and high percentage of numbers on the Do-Not-Call Registry ("DNC Registry") to make a good faith estimate for numerosity. Defendant's counter argument is to assert Yelp has some self-described "rigorous" vetting process. No details of this so-called "rigorous" vetting process are given except for the vague notion that if a user makes a report Yelp might view it and may be take some unspecified action. Furthermore, this "rigorous" vetting process completely ignores the fact that Yelp's own internal study admits that at least 19% of the numbers on Yelp are wrong. Yelp does not dispute this fact. An error rate of 19% hardly seems like "rigorous" vetting. And the fact that over 50% of phone numbers by population are on the Do Not Call Registry is a well documented fact from the actually rigorous Federal Trade Commission Data Book.

It is undisputed that Yelp called at least one phone number on the DNC Registry, Mr. Sapan's. If Yelp actually performed rigorous vetting, Mr. Sapan should never have been called based on a years old bare bones listing, yet he was. Defendant has not provided any explanation as to why their "rigorous" vetting did not catch the mistake regarding Mr. Sapan's number, but tries to infer without any factual detail that they somehow caught all other mistakes. Without an explanation as to why Mr. Sapan's case is not an aberration, it is much more likely that Mr. Sapan is just one among many mistakes the statistical estimate tends to show.

REPLY RE CLASS CERTIFICATION MOTION

And in response to Yelp's opposition claims, Plaintiff commissioned a very brief, cursory investigation where the investigator called a few phone numbers from Yelp listings where the phone number was on the Do Not Call Registry. The investigator quickly came up with four numbers incorrectly listed on Yelp that are almost certainly residential and are on the Do Not Call Registry. [Declaration of Chris Ciquera, pg. 2-3 ¶2-12]. These are just a few concrete examples tending to prove Plaintiff's statistical numerosity argument.

## 2) There Is Commonality

The Defendant did not address Rule 23(a) commonality independently, only muddled with Rule 23(b) predominance in an attempt to confuse the issues. In any event, Defendant's argument is premised on the notion that not every element is common. Commonality does not require all elements to be common, merely that there is one material common contention capable of class-wide determination. Defendant's failure to address most of the elements of plaintiff's prima facie class-wide case is a tacit admission that Rule 23(a) commonality is met. We will address Rule 23(b) predominance below.

## 3) Plaintiff Is A Typical Member Of The Proposed Class

Mr. Sapan is a typical member of the class. Typicality is regularly found where a defendant makes the same illegal contact to Plaintiff and the proposed class. *See*, *Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398 at *5(S.D. Cal. 2014); *Agne v. Papa John's Int'l, Inc*., 286 F.R.D. 559, 569 (W.D. Wash. 2012); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 940(7th Cir. 2016); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015). In a TCPA case this analysis is simple because all of the class members suffer the exact illegal

contact, same harm and have the exact same remedy. Defendant only raises two issues as to typicality, and neither has merit.

Defendant argues that Mr. Sapan lacks Article III standing claiming he is not actually injured. The Defendant relies solely on *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 790 (2016) ("*Stoops*") to support this proposition.

The *Stoops* court relies exclusively on the fact that Ms. Stoops admitted under oath her sole purpose in purchasing 20-odd cell phones was to generate TCPA complaints. *Id*. at 802. Mr. Sapan has stated under oath the direct contrary, that his phone line is for his personal residential use and that he hates telemarketing calls and brings the perpetrators to justice when possible. [Declaration of Jonathan Sapan- Reply ("Sapan Decl.") pg. 2 ¶2-3]. Defendants try to make much of the fact that Mr. Sapan occasionally tracks down junk callers who hide their identities using his temporary phone lines. But Defendants fail to mention that he only uses those temporary lines so telemarketers cannot use his investigation call to claim any sort of consent or established business relationship with his protected residential line, and that he does not sue for calls to those investigation numbers. [Sapan Decl. pg. 2 ¶4-8]. Therefore the *Stoops* case is completely off-point because the facts are polar opposites.

Additionally, it has been recognized that the logic in *Stoops* is not sound in *Cunningham v. Rapid Response Monitoring Services, Inc*., ("*Cunningham*") 251 F.Supp.3d 1187 (M.D. Tenn. 2017). In *Cunningham*, the defense tries the same slander that the plaintiff is a "professional plaintiff" as Yelp does here. The *Cunningham* court rejects and disparages the slur attempt and states the obvious: "The TCPA does not merely contemplate self-interested plaintiffs—it encourages them." *Id*. at 1197. Furthermore, courts have found standing in other circumstances when people have acted as testers in order to enforce the law. *See*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374–75, (1982), *see*, *also*, *Murray v. GMAC Mortg. Corp*., 434 F.3d 948, 954 (7th Cir. 2006). All of these rulings contradict the

*Stoops* notion that profiting from a violation of law somehow vitiates the harm suffered.

Defendant also argues that its claims about an Established Business Relationship ("EBR") defense make Mr. Sapan atypical. As argued in the Opposition to Defendant's Motion for Summary Judgment, there is no EBR between Yelp and Mr. Sapan. There is no two-way communication or transaction under any of the circumstances presented by Yelp. Speculative defenses do not defeat class certification. *Meyer v. Portfolio Recovery Associates, L.L.C.*, 707 F.3d 1036, 1042 (9th Cir. 2012) ("*Meyer*").

## 4) Plaintiff And His Counsel Will Adequately Represent The Class

### A) "Professional Plaintiff" Is Not A Slur And Does Not Infer Untrustworthiness

Defendant spends a large portion of its brief making character attacks on Mr. Sapan, accusing him of being a "professional" or "serial" plaintiff. While the Defendant may believe that Mr. Sapan's conduct in litigating and fighting against unscrupulous telemarketers for many years is worthy of derision, many courts would disagree. This sentiment is best summed up by the court in *Cunningham*:

"Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no "amateurs only" rule. See *Murray v. GMAC Mortg. Corp*., 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."). Nor is there anything out of the ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping a reward rather

than simply vindicating or receiving restitution for his constitutionally sufficient injury. The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives for private enforcement of law." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc*., 747 F.3d 489, 492 (7th Cir. 2014). Designing a cause of action with the purpose of enlisting the public in a law's enforcement scheme is a well-established tool that can be found in areas ranging from antitrust and civil rights law to environmental law and false claims. While these schemes do not eliminate the constitutional requirement of an injury-in-fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury." *Cunningham*, 251 F.Supp.3d at 1195-1196.

Contrary to the Defendant's contention that Mr. Sapan's prior litigation makes him untrustworthy, it in fact makes him a better class representative. *See*, *also*, *Murray v. GMAC Mortg. Corp*., 434 F.3d 948, 954 (7th Cir. 2006) ("Nothing about the frequency of Murray's litigation implies that she is less suited to represent others than is a person who received and sued on but a single offer. Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions.") Not only is Mr. Sapan not an "untrustworthy" litigant, he is in fact the perfect litigant to represent this class.

B) Plaintiff Does Not Have Credibility Issues

Defendant argues that Plaintiff cannot be adequate to represent the class because they hope that the case will be subsumed trying to defend his character. This is patently wrong because Mr. Sapan's prior filings and investigation in

REPLY RE CLASS CERTIFICATION MOTION

TCPA matters are not only permissible, but commendable. *Id*. Defendants try to make much of the fact that Mr. Sapan used an alias in trying to track down a different telemarketer. The Defendant does not cite to any law stating that using an alias with telemarketers is illegal.[1] There is inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud. *Harris v. Vector Marketing Corp*., 753 F.Supp.2d 996 (N.D. Cal. 2010), *see also*, *Lapin v. Goldman Sachs & Co*. 254 F.R.D. 168 (S.D.N.Y. 2008). Mr. Sapan did not use an alias with Yelp since they did not hide their identity when calling, nor has Yelp provided any legal authority that doing so would have violated the law. Finally, Mr. Sapan's litigation history is either irrelevant to this case or a boon to him as a matter of standing, trustworthiness, and class adequacy.

## C) Counsel Will Fairly And Adequately Represent The Class

The law firm of Prato & Reichman is adequate to represent the class in this case. Defendant's only contentions that Mr. Prato is inadequate stem from the Prato & Reichman website, which shows that Mr. Prato and Mr. Reichman also practice social security disability law, and the fact that Mr. Prato has not previously handled a class case. As to the first contention, the Prato & Reichman website is solely about social security because that is the only area that Prato & Reichman wants to advertise, which is the sole reason for the website. [Declaration of Justin Prato – Reply ("Prato Decl.") pg. 1 ¶2.] The law firm of Prato & Reichman has plenty of cases and clients outside of social security, and therefore elects not to advertise for the other areas of law. [Prato Decl. pg. 2 ¶3.] Furthermore, there is

---

[1] Defendants also fail to note that their source for the alias contention is the truly and completely untrustworthy Mr. Conrad Braun. He owns the attack site the recording was posted on. Mr. Braun is a felon convicted of multiple counts of fraud and sentenced to seven years in federal jail. He has tried unsuccessfully to sue Mr. Sapan in state and federal courts after losing a TCPA case to him wherein he made calls while hiding his identity. [See Prato Decl., pg. 2-3 ¶7-13].

REPLY RE CLASS CERTIFICATION MOTION

no law or rule that says an attorney's private website has to list all of their practice areas. This is a non-point.

The second contention Defendant makes against Mr. Prato is that he has no previous class or complex experience. Defendant cites to no case law or statutory support that such experience is required, because it is not. Defendant completely ignores the long list of federal court and administrative trial experience Mr. Prato provided in his declaration. Finally, Mr. Prato would like to point out that he has several more years of experience then Yelp's lead counsel in this case, Ms. Nicole Ozeran, and the attorney who signed the opposition, Ms. Claire Newland. . [Prato Decl. pg. 2 ¶4-6.]

As to Mr. Reichman the Defendant takes issue with a one-time sanction for his failure to appear at a telephonic conference for a case that had already been resolved. This one mistake from three years ago is not indicative of Mr. Reichman's ability over the ten years he has been practicing law. Furthermore, the Defendant does not cite to any legal authority which shows that a single past procedural sanction in a separate case is enough to disqualify an attorney.

Defendant accuses the law firm of Prato & Reichman of sloppy and "assembly line" work product and points to a few alleged errors in the pleadings. As to the issues in the Complaint, facts change routinely in cases between the pleading stages and though discovery. As to the amending the class definition in the certification motion, this is allowable as well. As to the allegation that Plaintiff filed confidential material, Plaintiff stands by his assertion that the Defendant did not properly designate that material. Nothing that the Defendant complains about even remotely rises to the level of the facts in *Sweet v. Pfizer*, 232 F.R.D. 360 (C.D. Cal. 2005), which is the sole case relied on by Defendant. The Court should find that the Prato & Reichman is adequate to represent the class.

Finally, should the Court have concern with the adequacy of Prato & Reichman, Plaintiff requests that the Court certify the class temporarily and allow a

- 8 -

reasonable time to find appropriate co-counsel.

## 5) Acertianabilty Is Not Class Certification Factor

There is no requirement for acertianability in the Ninth Circuit. *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1121 (9th Cir. 2017). Therefore the Court should reject all of Defendant's arguments relating to acertianability.

## III. RULE 23(b) FACTORS

## 1) Individual Issues Do Not Predominate

Under the Rule 23(b)(3), individual issues cannot <u>predominate</u> over the common issues of the class. F.R.C.P. 23(b)(3). The existence of individual issues is acceptable so long as they do not predominate. That is not the case here.

## A) Do Not Call Registry Eligibility Is Not A Valid Defense Or Individualized

Defendant contends that eligibility to be on the Do Not Call Registry could be individualized based on whether the use of a phone was residential and whether it was on the Registry at the time of the call. Plaintiff's proposed class definition defeats both potential issues. The FCC's TCPA rules do not care about use of the line, only making it a violation to call a "residential telephone <u>subscriber</u>" who put their number on the Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). The FCC is the expert agency on the Federal Communications Act of 1931, of which the TCPA is a small part, and whole swaths of that Act regulate common carriers and define how telephone tariffs and subscription work. *See*, 47 U.S.C. §§ 151-622 ("Chapter 5 – Wire Or Radio Communication"); 47 C.F.R. §§ 0.1-69.809. The F.C.C., in codifying the TCPA regulation has already determined that eligibility to

REPLY RE CLASS CERTIFICATION MOTION

be on the Do Not Call Registry is a function of line subscription only. Line subscription is easily determined by reference to the bill which commonly states "Residential Line" or "Business Line" and must always reference the tariff for the service billed for which will state whether it is residential or other service provided. This is why Plaintiff's proposed definition includes explicit reference to class members providing a bill. Similarly, Defendants proposed problem with timing is negated by the class definition requiring the Do Not Call Registry confirmation e-mail which always states the date on which the number was put on the Registry.

## B) No EBR Exists And If It Does It Will Apply Class-Wide

Plaintiff's position here is the same as his position in the Opposition to the Defendant's Motion for Summary Judgment that no EBR exists. Mere use of the Yelp website and Yelp's terms of service do not create an EBR as these are not a "two-way communication" or a "transaction" as required by the statute. Additionally these defenses will apply to most if not all of the class members since, as Yelp crows regularly, use of the Yelp website is ubiquitous and most class members will have visited it. If anything, this makes a class action the best way of litigating the EBR defense. Whether use of the Yelp website constitutes a voluntary two-way communication on the basis of the subscriber's purchase or transaction with Yelp such that "consumers have come to expect calls from companies with whom they have such a relationship" will affect the vast majority of the class since it is extremely likely they viewed the Yelp website. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, at ¶ 112 (2003). Far from this creating an individualized issue with Mr. Sapan, it is in fact best addressed by class-wide determination.

Defendant has not provided any example of where a unique EBR defense would apply to only the class representative or specific members of the class. The

REPLY RE CLASS CERTIFICATION MOTION

one example of an actual person whom they claim could maybe possibly have an EBR arises out of an email sent to Yelp concerning a call about advertising. But Yelp failed to address the single most important fact, whether that person's home phone was on the Do Not Call Registry to which an EBR defense might even apply. We have no knowledge of whether the e-mail provided is with a class member, or even a potential class member, and therefore whether it speaks to any individualized defense or is just a crutch for pure speculation. This lonely so-called example e-mail is woefully short of providing a non-speculative evidence of an individualized defense problem. *See*, *Meyer*, *supra* (9th Cir. 2012) (speculative defenses do not defeat a motion for class certification).

## C) No Individualized Inquires Will Predominate As To Prior Written Consent

Defendants in trying to confuse issues assert the sole e-mail discussed above to suggest there may be individual consent issues. The e-mail has the same fatal problem, no evidence as to whether the number is on the Do Not Call Registry and part of the class against whom defenses may even be asserted. It is an equally impermissible speculative defense argument. Furthermore, the entire consent defense is, similar to the EBR contention, best solved by class-wide determination. The FCC and the Ninth Circuit are both equally clear that TCPA consent, to be valid, must be unmistakably express, meaning giving "'clear and conspicuous disclosure' of the consequences of providing the requested consent*". In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, at ¶ 33 (2012); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Whether a vague e-mail that does not appear to be about sales calls and which fails to expressly state one's number is on the Do Not Call Registry and that they give permission to any and all future sales calls at that number is express enough permission to support a prior express written consent defense is dubious at best, could affect multiple class members and is better

REPLY RE CLASS CERTIFICATION MOTION

addressed on a class-wide basis than individually.[2] Additionally, returning to the defects of the one example e-mail, it does not give express permission to make telemarketing calls, only for one call back and therefore is not an example of express written consent and is irrelevant where two or more calls in a year are required by statute. *Id.* And, again, speculative defenses do not defeat a motion for class certification. *Meyer, supra.*

## D) VoIP Numbers Are Protected

Yelp is simply reading from the wrong part of the TCPA. Yelp confuses the TCPA subsection (b) violations related to cell phones with TCPA subsection (b) violations of the Do Not Call Registry under subsection (c). 47 U.S.C. § 227(b) & (c). The TCPA subsections (b) and (c) are not interconnected and do not link between each other. Yelp argues that whether a phone is VoIP or not will require individualized inquiry because it is arguably relevant to cell phone violations under subsection (b). But our current case has absolutely nothing to do with cell phones or subsection (b). Our current case against Yelp is brought entirely under subsection (c) violations of the Do Not Call Registry. Yelp's argument and lone case regarding interpretation of subsection (b)(1)(A)(iii) is irrelevant since our current case does not invoke or rely on subsection (b) in any way.

Furthermore, even if it were at issue, Yelp's cited case misreads subsection (b)(1)(A)(iii) which prohibits autodialed calls to a variety of wireless line types including cell phones and pagers and ends with "**or** any service for which the called party is charged for the call". *Id.* (emphasis added). Yelp's single cited case fails to apply the rule of the last antecedent or even realize that the last section is

---

[2] Furthermore, Ms. Hasenmueller was not a Yelp salesperson who makes outbound cold calls at the time of the e-mail, so this e-mail would not be part of the class calls, which would be based on calls made from phone numbers associated with "Account Executives", Yelp's term for outbound cold call sales people. Defendant's Opposition to Plaintiff's Motion For Class Certification, Declaration of Hasenmueller, p. 2, ¶ 1.

REPLY RE CLASS CERTIFICATION MOTION

preceded by an "or", unlike the wealth of authority that does. *See*, *e.g.*, *Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1257 (11th Cir. 2014); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 349 (3rd Cir. 2017).

### E) Individualized Inquires As To Any Arbitration Clauses Are Speculative

The Defendant has not provided any example of any arbitration clause actually applying to any member of the class. Speculative defenses do not defeat class certification. *Meyer, supra*, at 1042.

### F) No Individualized Inquires Will Be Necessary To Determine If Yelp Called More Than Once In A Year

Defendant's contention there needs to be some kind of intensive review if Yelp called a number more than once in a year is incorrect. As Plaintiff has noted in his motion, once the number of calls is determined via the phone records subpoenaed or any other method, it will be easy to tell if a call was made to the same number more than once in a year. While Defendant tries to make an issue out of how such an inquiry would be made, Plaintiff has already outlined how this information will be found in the phone records.

## 2) The Class Is Manageable, And Class Wide Adjudication Is Superior

The proposed class in this case is manageable. Defendant in its opposition routinely discusses alleged evidentiary issues with determining when calls were made by Defendant and to whom. Plaintiff contends that the phone records subject to subpoena will provide the information of what numbers were called. However, a defendant cannot make a class action "inefficient" by failing to keep and maintain records. *Appleton Elec. Co. v. Advance-United Expressways*, 494 F.2d 126 (7th Cir 1974). This is exactly what Defendant is attempting to do, trying to confuse the

record that the class is not manageable because of their bad record keeping. Such an argument is in bad faith and should not sway this Court. *Id.*

Intermeshed with manageability is if class wide adjudication is the superior method of resolution. Once again Plaintiff reiterates that given the large number of class members, the small dollar value of their individual claims, and the multitude of common issues present, use of the class action device is the most efficient and fair means of adjudicating the claims that arise out of Defendants' unlawful telemarketing calls. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources and promotes consistency and efficiency of adjudication. This is especially true of TCPA claims. *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012).

Additionally, as argued above, class action is the superior method of resolution of all of the affirmative defenses. The EBR defense highlights this issue perfectly. If use of Yelp's website or clicking the terms of service creates an EBR, that issue is going to apply to the vast majority of the class who likely used Yelp. When defenses also share common facts and legal issues, class is the superior method of resolution. *See*, *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003). Considering that the amounts per claim are small in TCPA cases, and there is a common core of facts and law for both the elements of the claims, and the affirmative defenses, Class adjudication is clearly superior to individual claims.

## IV. CONCLUSION

For the reasons discussed above and previously submitted, the requirements of Rule 23 are satisfied, and the Court should reject Defendant's arguments. Plaintiff respectfully request that the Court enter an order certifying the proposed classes pursuant to Rule 23(b)(3), appointing Prato & Reichman, APC, as class

counsel, and ordering that Plaintiff submit a proposed notice plan and form of notice within a reasonable time following entry of this order.


DATED: March 30, 2018                    **PRATO & REICHMAN, APC**


/s/Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
JONATHAN SAPAN,
and the putative class.

REPLY RE CLASS CERTIFICATION MOTION

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument as well as all attached documents were served upon all counsel of record in the above entitled and numbered cause on the date listed below.

    __X__ Via ECF

Nicole Ozeran, Esq.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

2029 Century Park East, Suite 3100

Los Angeles, CA 90067

DATED: March 30, 20178          **PRATO & REICHMAN, APC**

                      /s/Justin Prato, Esq.
                      By: Justin Prato, Esq.
                      **Prato & Reichman, APC**
                      Attorneys for Plaintiff
                      JONATHAN SAPAN,
                      and the putative class.

REPLY RE CLASS CERTIFICATION MOTION